IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ELIZABETH G.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

    Defendant.

Case No. 6:24-cv-02045-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

  Elizabeth G. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. For the reasons explained below, the Court reverses the Commissioner's decision and remands for further proceedings.

///

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party and lay witness.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

///

## BACKGROUND

### I.   PLAINTIFF'S APPLICATIONS

Plaintiff filed applications for benefits on November 19, 2021 (DIB) and January 8, 2022 (SSI).[2] (Tr. 365-76.) Following an initial remand from the Appeals Council, Plaintiff and an impartial vocational expert ("VE") appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on June 21, 2024. (*Id*. at 39-63.) On July 19, 2024, the ALJ issued a written opinion denying Plaintiff's applications. (*Id*. at 15-32.) On October 4, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id*. at 1-6.) Plaintiff now seeks review of the ALJ's decision.

### II.  THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r of Soc. Sec. Admin*., 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

---

[2] The Commissioner denied Plaintiff's previous DIB and SSI applications on May 23, 2019. (Tr. 15.)

PAGE 3 – OPINION AND ORDER

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

### III.    THE ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff was disabled. (Tr. 15-32.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 24, 2019, the alleged onset date. (*Id.* at 18.) At step two, the ALJ found that Plaintiff suffered from the following severe, medically determinable impairments: persistent depressive disorder with anxious distress; major depressive disorder; generalized anxiety disorder; obesity; chronic tension headaches versus migraines; peripheral neuropathy; bipolar disorder; and attention-deficit hyperactivity disorder. (*Id.*)

At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 20.) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work subject to the following limitations: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for two hours per eight-hour workday and sit for six hours per eight-hour workday; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, and crawl; understand, remember, carry out, and persist at simple, routine, repetitive tasks; no assembly-line pace; no teamwork; occasional contact with the general public,

PAGE 4 – OPINION AND ORDER

supervisors, and coworkers; no exposure to moving mechanical parts; no exposure to workplace hazards such as unprotected heights and moving machinery; work must require no reading skills greater than a fifth-grade level and no math skills greater than a fourth-grade level; and instructions should be given by way of demonstration. (*Id.* at 22.)

At step four, the ALJ concluded Plaintiff was unable to perform any past relevant work. (*Id*. at 31.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy Plaintiff could perform, including small products assembler I, production assembler, and sub-assembler. (*Id*. at 32.)

## DISCUSSION

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's step five findings because the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT") and the ALJ did not resolve the conflict. (Pl.'s Opening Br. ("Pl.'s Br.") at 1-7, ECF No. 9; *see also* Pl.'s Reply at 1-3, ECF No. 11.) The Commissioner responds that there was no obvious or apparent conflict between the VE's testimony and the DOT, if there was a conflict the VE's testimony reconciled the conflict, and the ALJ appropriately relied on the VE's testimony. (Def.'s Br. at 1-6, ECF No. 10.) For the reasons discussed below, the Court finds that the ALJ erred by not resolving the conflict and therefore reverses the Commissioner's decision and remands for further proceedings.

I.     **APPLICABLE LAW**

At step five, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (simplified) (first quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); and then citing 20 C.F.R. § 416.920(g)).

PAGE 5 – OPINION AND ORDER

The ALJ "first assesses a claimant's 'residual functional capacity,' defined as the most that a claimant can do despite 'physical and mental limitations' caused by his impairments and related symptoms." *Id.* (quoting 20 C.F.R. § 416.945(a)(1)). The ALJ "then considers potential occupations that the claimant may be able to perform." *Id.* (citing 20 C.F.R. § 416.966). In making this determination, "the ALJ relies on the DOT, which is the SSA's 'primary source of reliable job information' regarding jobs that exist in the national economy." *Id.* at 845-46 (first quoting *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); then citing 20 C.F.R. § 416.969; and then citing 20 C.F.R. § 416.966(d)(1)). In addition to the DOT, "the ALJ relies on the testimony of vocational experts who testify about specific occupations that a claimant can perform in light of his residual functional capacity." *Id.* at 846 (first citing 20 C.F.R. § 416.966(e); and then citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009)).

"If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (citing SSR 00-4P, 2000 WL 1898704, at *2 (2000)); *see also Zavalin*, 778 F.3d at 846 ("When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency.").

"Thus, the ALJ must first determine whether a conflict exists." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). "If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the

expert rather than the [DOT]." *Id.*; *see also Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) ("[A]n ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT, regardless of whether a claimant raises the conflict before the agency.") (citations omitted).

"[T]he conflict must be 'obvious or apparent' to trigger the ALJ's obligation to inquire further." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) (citing *Gutierrez*, 844 F.3d at 808). In other words, "not all potential conflicts between an expert's job suitability recommendation and the Dictionary's listing of 'maximum requirements' for an occupation will be apparent or obvious." *Gutierrez*, 844 F.3d at 807-08. "[T]asks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about." *Id.* at 808. "Likewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required." *Id.*

## II.  ANALYSIS

Plaintiff argues that the ALJ erred by limiting Plaintiff to "no assembly-line pace" (Tr. 22), but then relying on the VE's testimony that Plaintiff could perform jobs within the small products assembler I and production assembler occupations (*id.* at 32) which require assembly line work without resolving the conflict. (Pl.'s Br. at 1-7.) The Court agrees.

First, the Court finds that the conflict between a "no assembly-line pace" limitation and the small products assembler I and production assembler positions was obvious or apparent. *See Lamear*, 865 F.3d at 1205 ("[T]he conflict must be 'obvious or apparent' to trigger the ALJ's obligation to inquire further." (citing *Gutierrez*, 844 F.3d at 808)). The DOT description for "small products assembler I" reflects jobs performed on an assembly line: "Performs any combination of following repetitive tasks on *assembly line* to mass produce small products[.] . . . Frequently works at bench as member of assembly group assembling one or two specific parts

PAGE 7 – OPINION AND ORDER

and passing unit to another worker. Loads and unloads previously setup machines, . . . to perform fastening, force fitting, or light metal-cutting operation on *assembly line*." DOT 706.684-022, *available at* 1991 WL 679050 (emphasis added). The job description for "production assembler" similarly includes work on an "assembly line." *See* DOT 706.687-010, *available at* 1991 WL 679074 ("Performs repetitive bench or *line assembly* operations to mass-produce products, such as automobile or tractor radiators, blower wheels, refrigerators, or gas stoves: Places parts in specified relationship to each other. . . . May tend machines, such as arbor presses or riveting machine, to perform force fitting or fastening operations on *assembly line*. May be assigned to different work stations as production needs require. May work on line where tasks vary as different model of same article moves along line[.]") (emphasis added). Thus, there is an obvious or apparent conflict between Plaintiff's ability to perform jobs in these assembly line occupations when she cannot perform at an assembly-line pace.

      In light of the obvious or apparent conflict between no assembly-line pace and assembly line jobs, the ALJ was required to ask the VE to reconcile the conflict before relying on the testimony. *See Gutierrez*, 844 F.3d at 807 ("If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." (citing SSR 00-4P, 2000 WL 1898704, at *2 (2000))); *see also Zavalin*, 778 F.3d at 846 ("When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency.").

///

Here, the ALJ did not ask the VE to resolve the conflict between Plaintiff's assembly-line pace limitation and the available jobs. Although the VE testified that these two occupations "would be more like in the bench assembly kind of positions where it's not on a conveyer belt type situation" (Tr. 54), the VE's testimony is contradicted by the DOT which defines both positions to include jobs working on an assembly line or as a member of an assembly group assembling parts and passing units to another worker. Whether sitting at a bench or standing at a conveyor belt, both positions appear to require the assembling of something and passing it to another worker which necessarily requires an assembly-line pace. The VE's testimony that all of the jobs encompassed by these occupations were "more like in the bench assembly kind of positions" was not reasonable in light of the DOT definitions and the ALJ erred by not asking the VE to reconcile this conflict.

The ALJ's error was not harmless because the only other occupation the VE identified without an assembly line requirement was sub-assembler with only 13,270 jobs available nationally. (Tr. 32.) That number of jobs does not satisfy the ALJ's burden of demonstrating that Plaintiff can perform other work that exists in "significant" numbers in the national economy.[3] *See Gutierrez*, 740 F.3d at 529 (finding that 25,000 jobs in the national economy was a "close call"); *see also Ma v. Bisignano*, No. 24-7435, 2025 WL 3124479, at *2 (9th Cir. Nov. 7, 2025) (reversing and remanding where "[i]t [wa]s not clear that the ALJ would find 17,219 jobs to be a

---

[3] Even if Plaintiff could perform some jobs encompassed by the small products assembler I or production assembler occupations, the VE did not testify about what percentage of the available jobs would be available to a worker subject to a "no assembly-line pace" limitation. *Cf. Moore v. Comm'r of Soc. Sec.*, No. 2:14-cv-911, 2015 WL 4399787, at *3 (S.D. Ohio July 17, 2015), *report and recommendation adopted*, 2015 WL 5749464 (S.D. Ohio Sept. 30, 2015) (noting that when the VE identified "small product assembler" as a possible occupation for the claimant, the ALJ asked the VE "whether someone who could not do work that involved a fast assembly line pace or strict production quotas could do [that] job" and the VE "said the number of assembler jobs would be reduced but not completely eliminated").

PAGE 9 – OPINION AND ORDER

significant number" and noting that "we have held that 25,000 jobs are enough to support a finding of non-disability, but that it is a 'close call'" (quoting *Gutierrez*, 740 F.3d at 529)); *Rasmussen v. Kijakazi*, No. 21-35468, 2022 WL 2287566, at *2 (9th Cir. June 24, 2022) ("[O]nly 6,349 jobs would exist in the national economy that [the claimant] can perform, and that number would be well below what we have held was a 'close call' as to significance[.]" (quoting *Gutierrez*, 740 F.3d at 529)).

For these reasons, the Court holds that the ALJ erred at step five by failing to reconcile the obvious or apparent conflict between Plaintiff's assembly-line pace limitation and the small products assembly I and production assembler positions the VE identified. The Court therefore remands to allow the ALJ to (1) obtain VE testimony to reconcile the conflict and (2) determine if Plaintiff can perform other work that exists in "significant" numbers in the national economy. *See De Rivera v. Berryhill*, 710 F. App'x 768, 769 (9th Cir. 2018) ("On remand, the ALJ should: (1) reconcile the identified inconsistency regarding [the claimant]'s ability to perform the conveyor line bakery worker position; and/or (2) determine, in the first instance, whether the job numbers for the fish scaling machine operator position are significant.").

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 24th day of February, 2026.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge